23180, 23181. HEATH SALES COMPANY, INC. et al. v. BLOODWORTH; and vice versa.

ARGUED NOVEMBER 8, 1965—DECIDED DECEMBER 6, 1965.

*Bloch, Hall, Groover & Hawkins, Denmark Groover, Jr., Carl E. Lancaster, Jr.,* for appellants.

*Jack J. Gautier, Clarence H. Clay, Jr.,* for appellee.

ALMAND, Justice. Heath Sales Company, Inc., C. L. Stephens and C. I. Martin brought separate trover suits in Bibb Superior Court against Jimmy Bloodworth for enumerated items of personal property to which they claimed title. Bloodworth, in his answer, alleged that the items of personal property were in his possession as Sheriff of Bibb County; that they were slot machines and pinball machines and were gambling devices and contraband under the laws of Georgia and that they were seized by him under a lawfully executed search warrant. He prayed for an order authorizing him to destroy these devices and machines.

The plaintiffs filed general demurrers attacking the assertions in the defendant's answer that the machines and devices were contraband in that *Code* § 26-6502 upon which the defendant relies to hold said machines is violative of the due process clauses of the Fourteenth Amendment to the Federal Constitution and the Georgia Constitution in that the language of the statute is so vague and indefinite that it is incapable of being enforced in that men of common intelligence must necessarily

guess at its meaning. They also demurred on the ground that the machines and devices were not gambling machines and devices under the laws of Georgia, even if the laws were constitutional.

On motion of all the parties the three cases were consolidated and tried before the judge without a jury. On this hearing the court overruled the demurrers of the plaintiffs to the answer of the defendant. The court, after a hearing, found: (1) that the 19 machines involved in the Martin case were slot machines and gaming devices and under the ruling in *Elder v. Camp*, 193 Ga. 320 (18 SE2d 622) were contraband, and their destruction was ordered; (2) that the 52 machines commonly called "monkey machines" were gaming devices and contraband under the authority of *Davis v. State*, 77 Ga. App. 541 (49 SE2d 173). As to the latter class of machines it was stipulated by the parties that "These machines are what are known as upright machines, commonly called Monkey Machines, and . . . among the machines involved in the C. L. Stephens case is an antique slot machine, such as was in existence in the early days of the West" and "it is stipulated that the condition of the machines . . . in the C. L. Stephens case . . . was that they were not location ready. By that is meant that if they were to be placed on a location they could not be placed without some minor adjustment being made. It is stipulated that while the machines are not on location that they could be readied for location with minor adjustments and minor repairs. By minor adjustments, it is meant leveling, checking of existence of fuses, replacement if required, by checking the other essential parts and making such minor adjustments as might be needed but that essentially all parts for their operation were present with the machines"; (3) as to 3 pinball machines the court found that since they were set up to give a free game—something of value—they were gaming devices and contraband; (4) as to the remaining 16 machines the court found that "said machines are of the pinball type, are disassembled, that there is no evidence that said machines have been used for gambling or are to be used for gambling and the evidence is that said machines can be re-assembled so as to be used for amusement

purposes only. Under the decision in *Childs v. The State,* 70 Ga. App. 99, and the decision in *Williams v. The State,* 65 Ga. App. 843, pinball machines under the Georgia law are not illegal per se. Thus the court finds that said machines in their present condition and under the evidence in this case are not contraband, that the plaintiff has a property right therein and is thus entitled to the return of said machines."

To this order the plaintiffs filed notice of appeal. Error is enumerated on (a) the court's ruling on the demurrers; (b) the holding that *Code* § 26-6502 is applicable to all the machines and, (c) that this Code section is applicable to the machines which gave free plays and that a free play is a valuable thing.

The defendant filed notice of cross appeal. He asserts that the court erred in ordering the return of the disassembled pinball machines.

■ The plaintiffs attack the constitutionality of *Code* § 26-6502, which provides: "Any person who, by himself or another, shall keep, maintain, employ, or carry on any lottery or other scheme or device for the hazarding of any money or valuable thing, shall be guilty of a misdemeanor." This section is a codification of the Act of 1877, p. 112. The preceding section, *Code* § 26-6501, provides: "Any person who, either by himself or his agent, shall sell or offer for sale, or procure for or furnish to any person any ticket, number, combination, or chance, or anything representing a chance, in any lottery, gift enterprise, or other similar scheme or device, whether such lottery, gift enterprise, or scheme shall be operated in this State or not, shall be guilty of a misdemeanor." These two Code sections may be construed together in determining whether or not the offense of carrying on a lottery has been committed. *Russell v. Equitable Loan &c. Co.,* 129 Ga. 154 (58 SE 881); *Dove v. State,* 78 Ga. App. 425 (50 SE2d 773). The essentials of a lottery are consideration, prize and chance. *Equitable Loan &c. Co. v. Waring,* 117 Ga. 599 (44 SE 320, 62 LRA 93, 97 ASR 177).

Is *Code* § 26-6502 when construed with *Code* § 26-6501 so vague and indefinite that it is incapable of enforcement and deprives one of due process of law? We cannot agree that this section is so vague and indefinite that a person of ordinary

intelligence cannot understand its application to a particular state of facts. He is informed that if he keeps, maintains or employs any lottery, gift enterprise or other scheme or device for the hazarding of any money or *valuable thing* he shall be guilty of a misdemeanor. He is informed that if he keeps a machine or device where for a money consideration a chance or prize is given, such machine is a device for the hazarding of money or a valuable thing and he is guilty of a criminal offense. The trial judge did not err in holding this Code section to be valid.

■ Does *Code* § 26-6502 apply to the slot machines in question? This court in unanimous opinions beginning with *Kolshorn v. State,* 97 Ga. 343 (23 SE 829), and followed in *Meyer v. State,* 112 Ga. 20 (37 SE 96, 51 LRA 496, 81 ASR 17), *Jenner v. State,* 173 Ga. 86 (159 SE 564), and *Elder v. Camp,* 193 Ga. 320 (18 SE2d 622), has held that a machine in which the player inserts a coin of value and either loses his coin or wins money or something of value by chance is within the provisions of *Code* § 26-6502. We have been requested to review and overrule these cases. This request is refused. We are of the opinion that they are sound and controlling here.

■ Does *Code* § 26-6502 apply to a machine which gives only free plays? The trial court held that certain types of machines seized by the sheriff were pinball machines in which a free game was given the player if in the operation of the machine by use of a coin he achieved a score that entitled him to a free play. The trial judge held that obtaining the right of a free play is a thing of value and such category of machines is illegal. In this ruling he is supported by *AAA Amusements, Inc. v. State,* 106 Ga. App. 663 (127 SE2d 919) (cert. denied 106 Ga. App. 886). Counsel for the appellants cite cases from other jurisdictions where the courts are divided on the question of whether the prize of a free game in a pinball machine is a valuable thing within the meaning of the statute. In our opinion this court in *Jenner v. State,* 173 Ga. 86 (159 SE 564) in a unanimous opinion settled this question adversely to the contention of the appellants. In answer to a certified question from the Court of Appeals it was there held: "The owner and operator of a machine so arranged and contrived that when a

person inserted therein a five-cent coin and pulled a lever, a package of candy mints worth five cents was ejected, and 'sometimes, but not always, small metal tokens, varying from 1 to 20 tokens, were also ejected with the mints,' which could be used by inserting them back into the machines and thereby securing for the person playing it 'a horoscopic message or pretended fortune,' which was displayed in printing inside the machine, was guilty of a violation of section 398 of the Penal Code of 1910, which provides that 'No person, by himself or another, shall keep, maintain, employ, or carry on any lottery in this State, or other scheme or device for the hazarding of any money or valuable thing,' although the metal tokens referred to were plainly marked 'For amusement only,' and had no redemption value in money or merchandise." In the opinion it was said: "Amusement and entertainment of this character is usually and generally recognized as a thing of value. . . If the metal tokens had had stamped on them, instead of the words 'For amusement only,' the words 'This token has no value,' nevertheless if as a matter of fact it was understood that the token did secure for the person obtaining it the right to some form of amusement or entertainment which is generally recognized as having a value, the mere statement on the metal token that it had no value would not in itself render it valueless."

■ We now consider the contention of the appellee in his cross appeal that the court erred in holding that the disassembled pinball machines had been used for gambling and, there being evidence that the machines could be re-assembled so as to be used for amusement purposes only, these unassembled pinball machines in their present condition were not subject to condemnation. From the evidence in this case the court was authorized to make this conclusion. The cross appeal is without merit.

*Judgment affirmed on the appeal and on the cross appeal. All the Justices concur, except Mobley, J., not participating for providential cause.*